UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEMETRIUS A. HUFF,

                               Petitioner,

                               v.

CHRISTOPHER MILLER[1],

                               Respondent.

**Hon. Hugh B. Scott**

**17CV364V**

**Report
&
Recommendation**

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 8). The self-represented petitioner has filed an application to this Court for habeas corpus relief pursuant to 28 U.S.C. §2254 challenging his state court conviction (Docket No. 1, Pet.). Petitioner asserts the following grounds in support of his Petition: failure to suppress unlawfully seized evidence and a jailhouse informant should have been deemed incredible as a matter of law (id.). Respondent duly filed the State Court Record (received on July 18, 2017, hereinafter "SCR") and his responding Memorandum (Docket No. 4). Petitioner replied (Docket No. 5). This matter thus is fully briefed.

## BACKGROUND

       The underlying offense is the murder of Darren Brown (SCR, Vol. 1, Appellant Br. at 2, hereinafter "Appellant Br."). According to petitioner's appellate brief to the Appellate Division of the New York State Supreme Court (id.), in the summer of 2012, petitioner was seventeen years old and lived with his grandmother, Sandra Archibald. Petitioner was a new, low-level

---

[1] Christopher Miller is the superintendent at Great Meadow Correctional Facility, the facility petitioner was housed when he filed this habeas corpus Petition, Docket No. 1. Petitioner now is housed in Upstate Correctional Facility, Docket No. 9. If appropriate, under Federal Rule of Civil Procedure 25(d), the appropriate superintendent who has petitioner in their custody will be substituted as respondent.

member of the Crips gang and he argued on appeal that higher level gang members were believed to have killed Brown (id.). Petitioner and Ezeiekile (Zeke) Nafi were charged with this murder (id.). The police were led to petitioner from a tip from another gang member, David Elliott (id.).

During a suppression hearing, evidence was introduced that Detectives Salvatore Valvo and James Lema went to Ms. Archibald's home on December 12, 2012 (see id. at 3 (summarizing hearing transcripts); SCR, Vol. 2, Hearing Tr. Feb. 22, 2013, at 11 [hereinafter "Feb. 22 Hearing Tr."]). Detective Valvo asked Ms. Archibald to enter and she let him in (Appellant Br. at 3; Feb. 22 Hearing Tr. at 11-12, 24, 43, 63). Once inside, Valvo said that he had a warrant and was there to search the house, specifically he was seeking a pair of Timberland boots in the attic (Appellant Br. at 3; Feb. 22 Hearing Tr. at 12-13, 25, 42-43). Ms. Archibald saw a piece of paper that she thought was a search warrant because of its official appearance; she had never seen a search warrant (Appellant Br. at 3; Feb. 22 Hearing Tr. at 44). Ms. Archibald testified that she was showed "an official letter," then denied that the officers showed her anything, but the officers told her that they had a search warrant (Feb. 22 Hearing Tr. at 44). The officer then showed an official letter to Ms. Archibald; she believed that it was a search warrant and the officer showed her the official letter (id.). After the search, the detective asked Ms. Archibald to sign a consent form (id.), but she refused (id.). Ms. Archibald denied granting permission to enter and the detectives never read the permission to search form (Appellant Br. at 3-4; Feb. 22 Hearing Tr. at 45, 47, 53, 60). As Ms. Archibald and the detectives later walked up the stairs to the attic, Detective Valvo showed her a piece of paper that she assumed to be a search warrant (Appellant Br. at 4; Feb. 22 Hearing Tr. at 52), but that form was a consent to search form (Appellant Br. at 4; Feb. 22 Hearing Tr. at 45).

Petitioner had pled guilty of manslaughter in return for testifying against Nafi (SCR, Vol. 1, Appellant Br. at 2). During Nafi's trial, however, petitioner refused to testify against him, fearing street retribution (id.). The trial court vacated petitioner's plea and petitioner was tried (id.). Petitioner was convicted of second-degree murder in 2013, sentenced in January 2014 to 25 years to life in prison. He appealed to the Appellate Division of New York State Supreme Court, Fourth Department, arguing (relevant to this Petition) that the search of his grandmother's house was unconstitutional (with evidence seized therefrom should have been suppressed) and that the evidence from a jailhouse informant should have been excluded as being incredible as a matter of law, thus there was insufficient evidence of his guilt.

Petitioner argued on appeal that the People's case rested on the testimony of jailhouse informant, Damian Johnson (Appellant Br. at 8, citing Vol. 3, Trial Tr. Oct. 7, 2013, at 733, hereinafter "Oct. 7 Trial Tr."). He pointed out Johnson's criminal record and his past instances of lying to show the lack of credibility of the informant (Appellant Br. at 8; Oct. 7 Trial Tr. at 738, 362, 764, 740-43, 760, 761) as he argued in summation (SCR, Vol. 3, Oct. 8 Trial Tr. at 93338, 942-43). Johnson met petitioner in the Erie County Holding Center Constant Observation unit (Appellant Br. at 8; Oct. 7 Trial Tr. at 735). Johnson testified that petitioner provided him with written statements regarding petitioner's case that implicated petitioner in Brown's murder (Appellant Br. at 8-9; Oct. 7 Trial Tr. at 736, 737, 746, 749, 756, 833-40). Johnson hoped these statements would give him favorable treatment (Appellant Br. at 9; Oct. 7 Trial Tr. at 811).

First, petitioner argued that the state trial court erred in denying his motion to suppress physical evidence seized from the attic of the home he resided with his grandmother, Sandra Archibald, People v. Huff, 133 A.D.3d 1222, 1223, 19 N.Y.S.3d 378, 379 (4th Dep't 2015), leave

3

denied, 27 N.Y.3d 999, 38 N.Y.S.3d 109 (2016). The Appellate Division rejected this contention, accepting the credibility finding of the trial court that the detective's testimony that Ms. Archibald consented to the search, id., 133 A.D.3d at 1223, 19 N.Y.S.3d at 379. The detective testified that Ms. Archibald, with a master's degree, "was pleasant and cooperative, she let the detectives into the house, and she led the detectives to the attic and unlocked the door to the attic for them. Only after the inculpatory evidence was found did the grandmother become aggravated and refuse to sign the consent form," id., 133 A.D.3d at 1224, 19 N.Y.S.3d at 379. The Appellate Division granted deference and did not disturb this credibility determination absent proof that the consent was not supported by the record, id., 133 A.D.3d at 1224, 19 N.Y.S.3d at 380, concluding that Ms. Archibald's consent was not coerced, that it was voluntarily given, and not the result of duress or coercion, id., 133 A.D.3d at 1224, 19 N.Y.S.3d at 380 (quoting People v. Quagliata, 53 A.D.3d 670, 671, 861 N.Y.S.2d 792 (2d Dep't), leave denied, 11 N.Y.3d 834, 868 N.Y.S.2d 609 (2008), quoting in turn Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973)). The Appellate Division found that Ms. Archibald "manifested her consent to the search by her willingness to cooperate and her conduct in leading the officers to the attic and unlocking the door thereto," id., 133 A.D.3d at 1224, 19 N.Y.S.3d at 380 (citing state cases). The Appellate Division affirmed his conviction, id.,133 A.D.3d at 1223, 19 N.Y.S.3d at 379. The court also found, contrary to petitioner's contention, that "the testimony of the jailhouse informant was not incredible as a matter of law," id., 133 A.D.3d at 1226, 19 N.Y.S.3d at 381 (citing state cases).

*Habeas Contentions (Docket No. 1)*

Petitioner now argues that his motion to suppress was illegally denied because the evidence (bloody boots) found in his grandmother's attic was the product of a warrantless search.

Ms. Archibald asked to see a search warrant and the detectives instead showed her a consent to search form as a purported ruse. Petitioner concludes that the detectives tricked Ms. Archibald into opening the attic door and revealing the seized evidence.

As for the jailhouse informant, petitioner reaffirms that this person is not credible as a matter of law and the state courts violated his constitutional rights in not suppressing that informant's statement. (Docket No. 1, Pet.)

Respondent contends that petitioner was afforded a full and fair opportunity to litigate the Fourth Amendment claim in state courts, precluding habeas review (Docket No. 4, Resp't Memo. at 5-6), Stone v. Powell, 428 U.S. 465, 482 (1976). Ms. Archibald's consent was a matter of witness credibility (her version as opposed to the detectives' version); therefore, respondent concludes that this factual determination is presumed correct under 28 U.S.C. § 2254(e)(1) (id. at 6). Respondent notes that Ms. Archibald was not in custody and fully cooperated, hence voluntarily gave her consent to search (id.). As for the credibility of the jailhouse informant, respondent states that this implicates the weight of evidence, and that is not cognizable on habeas review, 28 U.S.C. § 2254(a), Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (id. at 7).

Petitioner replies that his grandmother consented because she was led to believe that the consent to search form was a search warrant and she was never instructed to read the form (Docket No. 5, Pet'r Reply Memo. at 4). She asked if the officers had a search warrant, but the officers showed her the consent to search form instead (id. at 5) and officer Valvo testified that it was subtle coercion (id. at 6). Petitioner repeats his contention that the jailhouse informant was incredible as a matter of law (id. at 7-9).

**DISCUSSION**

I.   Habeas Standards

    A.   Standard of Review

State court findings of "historical" facts, and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986); see also 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct."

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 28 U.S.C. § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to findings both by state trial courts and by state appellate courts. Smith v. Sullivan, 1 F. Supp.2d 206, 210-11 (W.D.N.Y. 1998) (Larimer, C.J.); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert. denied, 490 U.S. 1059 (1989). As noted by then-Chief Judge Larimer in Smith, "the new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court's decision was defective in some way." Smith, supra, 1 F. Supp.2d at 211. The amended statute "requires federal courts 'to

6

give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir.1997) (quoting Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 520 U.S. 1122 (1997)); see also Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir.1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion").

Initially, it should be noted that the petitioner has failed to preserve these arguments for habeas corpus review. Federal habeas review is barred when a state court expressly relied on a procedural default as an independent and adequate state ground. See Harris v. Reed, 489 U.S. 255 (1989); Wainwright v. Sykes, 433 U.S. 72 (1977). "A federal court is generally precluded from reviewing any claim included within the habeas petition for which a 'state court rests its judgment on an adequate and independent state ground, including a state procedural bar.'" Bacchi v. Senkowski, 884 F. Supp. 724, 730 (E.D.N.Y.1995) (quoting Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992) (per curiam)).

B. Exhaustion

In the interest of comity and in keeping with the requirements of 28 U.S.C. §2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts.[2] See Ayala v. Speckard, 89 F.3d 91 (2d Cir. 1996) citing Picard v. Connor, 404 U.S. 270, 275 (1971); Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir.1982) (in banc), cert. denied, 464 U.S. 1048 (1984). A state prisoner seeking federal

---

[2]Although §2254(b)(2) provides the Court with discretion to deny (but not to grant) an application for a writ of habeas corpus on the merits notwithstanding the failure of the applicant to exhaust state court remedies, based upon the circumstances presented in this case the Court believes that it is more appropriate to dismiss the petition to allow for further state court proceedings to ensure that any federal habeas corpus petition be determined upon a complete record.

7

habeas corpus review of his conviction must first exhaust his available state remedies with respect to the issues raised in the federal habeas petition, Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982). To meet this requirement, the petitioner must have raised the question in a state court challenge to his conviction and put the state appellate court on notice that a federal constitutional claim was at issue. See Grady v. Le Fevre, 846 F.2d 862, 864 (2d Cir.1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir.1984).

The record here indicates that petitioner exhausted or minimally, or that respondent does not raise exhaustion as a ground for rejection of this petition.

II.  Application

    A.  Consent to Search

A warrantless search does not violate the Fourth Amendment if "the authorities have obtained the voluntary consent of a person authorized to grant such consent," United States v. Ellicott, 50 F.3d 180, 185 (2d Cir. 1995). Because defendants frequently deny consent was voluntarily obtained, the issue becomes a credibility determination, see United States v. Hernandez, 5 F.3d 628, 633 (2d Cir. 1993). Consent to search need only be voluntary, that is obtained without coercion, see Schneckloth, supra, 412 U.S. at 241-42. Voluntariness is determined by the totality of circumstances, whereby consent was obtained without coercion, United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993). Factors relevant to voluntariness include the age, education, background, physical and mental condition of the person seeking consent, and the setting of when consent was obtained, see Schneckloth, supra, 412 U.S. at 226.

One area of consent is where that consent was obtained by ruse. In Bumper v. North Carolina, the Supreme Court held that agents falsely claimed that they had a warrant, compelling an elderly woman to consent to a search, 391 U.S. 543, 550 (1968); see also United States v.

Montes-Reyes, 547 F. Supp. 2d 281, 287-88 (S.D.N.Y. 2008). The Bumper Court held that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent," 391 U.S. at 550; see also Schneckloth, supra, 412 U.S. at 223-34; Montes-Reyes, supra, 547 F. Supp.2d at 287-88. The court in Montes-Reyes summarized the relevant law by stating that the totality of the circumstances dictates whether consent was voluntarily given, 547 F. Supp.2d at 290.

These decisions arise from original appellate review of criminal convictions and not habeas review. Federal habeas corpus review, however, restricts this Court to the facts as found by the state courts, 28 U.S.C. § 2254(e)(1) (presumption of correctness of state court findings of fact). Petitioner has not shown any errors in the facts found by the trial court and accepted by the Appellate Division. The factual issues surrounding Ms. Archibald's consent are reduced to a credibility dispute between her and Detective Valvo. As with the Fourth Department, see Huff, supra, 133 A.D3d at 1223-24, 19 N.Y.S.3d at 379-80, this Court cannot reweigh the credibility of witness testimony on habeas review.

Petitioner's argument that his grandmother was deceived rings hollow given that she had a master's degree. She was shown the document she presumed was a search warrant and could have read it (or insisted upon reading it before detectives moved any further into her home) to distinguish it from a search warrant (even if she was not advised to read it). Furthermore, her actions in allowing the officers in and letting them walk upstairs to the attic, and her cooperativeness (given the credibility findings in state court that accepted the detective's version of events) shows, from the totality of circumstances, that Ms. Archibald voluntarily consented to

the search of the attic for the boots. Therefore, petitioner's Habeas Corpus Petition on this ground should be **denied**.

B.      Credibility of Informant

Under New York State law, an informant is incredible as a matter of law, People v. Carr, 99 A.D.3d 1173, 1174, 952 N.Y.S.2d 342, 344 (4th Dep't 2012), leave denied, 20 N.Y.3d 1010, 960 N.Y.S.2d 353 (2013); Huff, supra, 113 A.D.3d at 1226, 19 N.Y.S.3d at 381, if their statements are "manifestly untrue, physically impossible, contrary to experience, or self-contradictory," People v. Ponzo, 111 A.D.3d 1347, 1348, 975 N.Y.S.2d 274, 275 (4th Dep't 2013) (citation omitted); Huff, supra, 113 A.D.3d at 1226, 19 N.Y.S.3d at 381. In Carr, the informant also had an extensive criminal history and had received a favorable plea deal for testifying, the Appellate Division held that the informant's testimony was not incredible as a matter of law, 99 A.D.3d at 1174, 952 N.Y.S.2d at 344. The jury there was informed of the nature of the informant's plea deal and the details of his prior criminal conduct, therefore the Appellate Division did not see any basis for disturbing the credibility determination, id., at 1174, 952 N.Y.S.2d at 344.

Petitioner is challenging the sufficiency of the evidence for his conviction, resting exclusively on the admission of what he believes is incredible testimony of a jailhouse informant. Respondent correctly argues (Docket No. 4, Resp't Memo. at 7) that the weight of evidence is purely a state law matter and not cognizable on habeas review. That claim alone does not raise a federal constitutional issue that this Court can address on habeas review.

"'A habeas petitioner challenging the sufficiency of the evidence supporting his conviction bears a heavy burden,'" Pace v. Herbert, No. 04CV843, 2009 WL 3046714, at *4 (W.D.N.Y. Sept. 17, 2009) (Telesca, J.) (quoting Knapp v. Leonardo, 46 F.3d 170, 1789 (2d

10

Cir.), cert. denied, 515 U.S. 1136 (1995)).  The standard challenging the sufficiency of evidence on habeas review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Jackson v. Virginia, 443 U.S. 307, 391 (1979); Pace, supra, 2009 WL 3046714, at *4.  To make determine the essential elements of the crime, this Court "must look to state law, see Jackson, [supra], 443 U.S. at 319," Pace, supra, 2009 WL 3046714, at *4, and the evidence must be reviewed as a whole, Pace, supra, 2009 WL 3046714, at *4; see Maldonaldo v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (assessment of weight of evidence or credibility of witnesses is for jury and appellate courts defer to jury's assessment).  Judge Michael Telesca there held that "the court is not required to decide whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but whether any rational trier of fact could have found guilt beyond a reasonable doubt based on the evidence presented." Pace, supra, 2009 WL 3046714, at *4, see Jackson, supra, 443 U.S. at 319.  On habeas review, this Court must "'credit every inference that could have been drawn in the state's favor . . . whether the evidence being reviewed is direct or circumstantial,'" Pace, supra, 2009 WL 3046714, at *4 (quoting Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir.), cert. denied, 488 U.S. 929 (1988)).

As in Pace, supra, 2009 WL 3046714, at *4, the Appellate Division, Fourth Department, here addressed petitioner's contention in direct review that there was insufficient evidence for the conviction based on the jailhouse informant's testimony, Huff, supra, 133 A.D.3d at 1226, 19 N.Y.S.3d at 381.  Again, this Court on habeas review cannot assess the informant's credibility.  Petitioner has not met the heavy burden of challenging the sufficiency of the evidence.

Petitioner claims that this issue can be reached under 28 U.S.C. § 2254(d)(2) because the decision was based upon an unreasonable determination of the facts given the evidence (Docket No. 5, Pet'r Reply Memo. at 7). Petitioner points to the credibility arguments against accepting the informant's testimony (id. at 8), with the testimony not being corroborated and being unreliable on the question of the location of the weapon (id.). He cites to New York Criminal Procedure Law 470.05 and 470.15 as the grounds for raising the issue on state court appeal (id. at 8-9). Since these are state law, rather than federal constitutional grounds, this is not a basis for federal habeas review, see Garrett, supra, 438 F. Supp. 2d at 470. As an appellant, petitioner raised the CPL 470.15 grounds before the state appellate courts but that does not warrant habeas relief, Garrett, supra, 438 F. Supp. 2d at 470 ("in making a 'weight of the evidence' argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law, for which habeas review is not available," citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). As held in Garrett, supra, 438 F. Supp. 2d at 470, determination that an informant was incredible is one "in the province of the jury" and not grounds for habeas relief, see also Maldonaldo v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).

If considered under New York law, the jury here was also instructed about the nature of the informant's plea deal and the details of his prior criminal conduct as factors for considering Johnson's credibility (SCR, Vol. 3, Trial Tr., Oct. 9, 2013, at 1004-05), see Carr, supra, 99 A.D.3d at 1174, 952 N.Y.S.2d at 344.

Thus, petitioner's Habeas Corpus Petition (Docket No. 1) should be **denied**.

## CONCLUSION

For the reasons stated above, the Petition for Habeas Corpus (Docket No. 1) should be **DISMISSED**.

A copy of this Report and Recommendation was sent by Chambers to petitioner at his current facility.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 USC §636(b)(1), Fed. R. Civ. P. 72(b) and WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal

authority." **Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      March 20, 2020